UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUNSCREEN MIST HOLDINGS, LLC,

        Plaintiff,

        *v.*

SNAPPYSCREEN, INC.,

        Defendant.

**REPORT AND RECOMMENDATION**
19-CV-835-PKC-SJB

**BULSARA, United States Magistrate Judge:**

Sunscreen Mist Holdings, LLC ("Sunscreen Mist") alleges that SnappyScreen, Inc. ("SnappyScreen") infringed on one of its patents, U.S. Patent number 6,918,897 (the "'897 Patent"), and that it engaged in false advertising in violation of the Lanham Act.[1] The patent at issue relates to a vending machine that dispenses and sprays sunscreen lotion on customers. The parties agree on the construction of all terms in the '897 Patent save for one term in claim one.[2]

Claim one discloses

[a] vending machine for dispensing sunscreen lotion comprising:
    means to accept payment from a user,
    means to store sunscreen lotion, and
    means to spray the user with the stored sunscreen lotion after acceptance of payment
    wherein the means to store sunscreen lotion is adapted to store a plurality of grades of sunscreen lotion, the machine further compromising means for the user to select which grade of sunscreen lotion will be sprayed by the means to spray.

---

[1] (Second Am. Compl. and Demand for Jury Trial dated Sept. 10, 2019 ("Second Am. Compl."), Dkt. No. 55, ¶ 1).

[2] (Am. Joint Claim Construction Chart ("Claim Construction Chart"), attached as Ex. B to Pl.'s Initial Claim Construction Br. dated Nov. 13, 2019, Dkt. No. 56, at 1, 7).

U.S. Patent No. 6,918,897 col. 8 ll. 57–67.  The parties dispute the meaning of "means to store sunscreen lotion." (Claim Construction Chart at 7); U.S. Patent No. 6,918,897 col. 8 l. 60.

The Court respectfully recommends[3] that the term "means to store sunscreen lotion" be construed as a means-plus-function limitation, with the function "storing sunscreen lotion" limited by the corresponding means "sunscreen lotion tanks **381– 385**" and all equivalent structures having equivalent function to these disclosed structures and alternatives.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 19, 2005, the '897 Patent, titled "SPF Vending Machine and Method," was issued to inventor Joseph Severino ("Severino"). (Second Am. Compl. ¶ 42).  The patent is for

> [a]n automatic sunscreen application vending apparatus which accepts payment from a user, stores a plurality of grades of sunscreen lotion, allows the user to select a grade of suntan lotion such as by SPF factor, and sprays the user with the selected grade of stored sunscreen lotion after acceptance of payment.

U.S. Patent No. 6,918,897, at [57].  To use the machine, a user makes a payment, which unlocks a first booth where the user can change out of her bathing suit.  *Id.* col. 4 ll. 12– 65.  Next, the user enters an enclosed application booth, which has mounted spray assemblies.  *Id.* col. 5 ll. 17–25; *see also id.* fig. 1.  Inside this application booth, the user selects her preferred SPF grade of sunscreen via a control panel.  *Id.* col. 5 ll. 54–64; *see also id.* fig. 3.  The mounted spray assemblies in the application booth are connected to

---

[3] There is a split in authority on whether claim construction is a nondispositive matter.  *See Alexsam, Inc. v. MasterCard Int'l Inc.*, No. 15-CV-2799, 2018 WL 2849692, at *1 n.1 (E.D.N.Y. June 11, 2018) (collecting cases), *report and recommendation adopted*, 2020 WL 3286785 (June 17, 2020).

sunscreen storage tanks, and once the user selects an SPF grade, the selected sunscreen is sprayed over the user's body. *Id.* col. 5 ll. 17–25. The connections between the spray assemblies and storage tanks are illustrated in Figure 4 in the patent specification. *Id.* fig. 4. The machine is meant to "make protecting one's skin quick, easy, and convenient for all ages." (Second Am. Compl. ¶ 22). It is marketed as an amenity for hotels and resorts. (*Id.* ¶ 23).

Severino assigned the '897 Patent to Sunscreen Mist on March 12, 2014. (*Id.* ¶ 43). The assignment was recorded in the U.S. Patent Office on August 6, 2014. (*Id.*; Patent Assignment Cover Sheet dated Aug. 6, 2014, attached as Ex. D to Second Am. Compl., Dkt. No. 55). Sunscreen Mist, a limited liability company organized in Michigan, is "in the business of consulting, designing and building its spray-on sunscreen machines for its customers throughout the United States and in other countries." (Second Am. Compl. ¶¶ 2, 27).

SnappyScreen is a limited liability company organized in New York. (*Id.* ¶ 4). It was founded by Kristen McClellan ("McClellan"). (*Id.* ¶ 34; Def. SnappyScreen, Inc.'s Answer and Affirmative Defenses to Pl.'s Second Compl. dated Dec. 2, 2019, Dkt. No. 57, ¶ 34). Sunscreen Mist alleges that SnappyScreen offers a product—marketed as "The World's First Touchless Sunscreen Application System"—that infringes on the '897 Patent. (Second Am. Compl. ¶¶ 35–37). McClellan developed the product while a student at Cornell University, and it is now offered at various hotels and resorts. *See Our Story*, SnappyScreen, https://snappyscreen.com/pages/our-story (last visited Feb. 26, 2021).

Sunscreen Mist commenced this action against SnappyScreen, Loews Miami Beach Hotel Operating Company, Inc. ("Loews"), and HIT Portfolio I Misc TRS, LLC

3

("Hyatt"), in the Southern District of Florida. *Sunscreen Mist Holdings, LLC v. SnappyScreen, Inc.*, No. 18-CV-20971, 2019 WL 8405208, at *1 (S.D. Fla. Feb. 11, 2019).[4] On motion by SnappyScreen and Loews, the Court severed the causes of action against SnappyScreen and transferred them to this District on February 11, 2019. *Sunscreen Mist Holdings, LLC*, 2019 WL 8405208, at *4. The case is stayed as to Loews and Hyatt pending resolution of this patent infringement suit between Sunscreen Mist and SnappyScreen. *Id.*

The '897 Patent includes two independent claims, claim one and seventeen, and seventeen dependent claims. U.S. Patent No. 6,918,897 col. 8 l. 56 to col. 10 l. 30. Claim one discloses:

> [a] vending machine for dispensing sunscreen lotion comprising:
> means to accept payment from a user,
> means to store sunscreen lotion, and
> means to spray the user with the stored sunscreen lotion after acceptance of payment
> wherein the means to store sunscreen lotion is adapted to store a plurality of grades of sunscreen lotion, the machine further compromising means for the user to select which grade of sunscreen lotion will be sprayed by the means to spray.

---

[4] Loews and Hyatt allegedly purchased SnappyScreen's product and offered it at hotels they operate in Florida. *Id.* at *1 & n.3. In March 2017, Sunscreen Mist initiated an action against SnappyScreen in the Middle District of Florida, which was dismissed without prejudice. *Sunscreen Mist Holdings, LLC v. SnappyScreen, Inc.*, No. 17-CV-132, 2017 WL 5889729, at *1 (M.D. Fla. Nov. 29, 2017).

4

*Id.* col. 8 ll. 57–67. Only one term remains in dispute: "means to store sunscreen lotion." (Claim Construction Chart at 7); *see* U.S. Patent No. 6,918,897 col. 8 l. 59.[5] The Court's claim construction recommendation follows herein.

## DISCUSSION

To be valid, "a patent must describe the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996) (alterations in original) (quoting *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891)). To this end, patents must include both a "specification describing the invention 'in such full, clear, concise terms as to enable any person skilled in the art . . . to make and use the same'" and "'claims,' which 'particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention." *Id.* (alterations in original) (quoting 35 U.S.C. § 112). The claim "defines the scope of the patentee's rights." *Id.* at 372. And the scope of such a claim, or "'the construction of a patent, including terms of art within its claim,'" is "'exclusively' for 'the court' to determine." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (quoting *Markman*, 517 U.S. at 372).

---

[5] Sunscreen Mist filed its initial claim construction brief on November 13, 2019. (Pl.'s Initial Claim Construction Br. dated Nov. 13, 2019 ("Initial Br."), Dkt. No. 56). SnappyScreen filed its reply on December 12, 2019. (Def.'s Reply Claim Construction Br. dated Dec. 12, 2019 ("Reply Br."), Dkt. No. 58). The undersigned held a claim construction hearing on October 26, 2020. (Min. Entry and Order dated Oct. 26, 2020; *Markman* Hr'g Tr. dated Oct. 26, 2020 ("Tr."), Dkt. No. 63). Following the hearing, the parties each submitted supplemental briefs. (Pl.'s Suppl. Claim Construction Br. dated Nov. 13, 2020 ("Pl.'s Suppl. Br."), Dkt. No. 65; Def.'s Suppl. Claim Construction Br. dated Nov. 13, 2020 ("Def.'s Suppl. Br."), Dkt. No. 64).

Terms of a claim may "be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.[6] Such a "means-plus-function limitation recites a function to be performed rather than definite structure or materials for performing that function." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). "In exchange for using this form of claiming, the patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function." *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 42 (Fed. Cir. 2020).

To "determin[e] the proper construction of a claim, 'the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification, and if in evidence, the prosecution history.'" *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1152 (Fed. Cir. 1997) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Such "intrinsic evidence" is "the most significant source of the legally operative meaning of the claim language." *Id.* (quoting *Vitronics Corp.*, 90 F.3d at 1582). "[T]he words of a claim are generally given their ordinary and customary meaning." *Easyweb Innovations*, 2016 WL 1253674, at *5

---

[6] Section 112 was amended by the Leahy-Smith America Invents Act ("AIA"), enacted in September 2011. Pub. L. No. 112-29 § 4(c), 125 Stat. 284, 296. The Court finds—and the parties agree—that, because the '897 Patent was filed before the adoption of the AIA, (Second Am. Compl. ¶ 42), the post-AIA amendments do not apply, Pub. L. No. 112-29 § 4(e), 125 Stat. 284, 297; *see, e.g.*, *Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-CV-4550, 2016 WL 1253674, at *24 (E.D.N.Y. Mar. 30, 2016), *aff'd*, 689 F. App'x 969 (Fed. Cir. 2017).

(quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). This "ordinary and customary meaning" is determined with reference to how "a person of ordinary skill in the art in question . . . as of the effective filing date of the patent application" would understand them. *Id.* (quoting *Phillips*, 415 F.3d at 1313). Next, and only if ambiguity remains, may a court look to extrinsic evidence—for example, expert testimony. *CVI/Beta Ventures, Inc.*, 112 F.3d at 1152–53.

In construing a means-plus-function claim, the Court must first "determine the function to which the means expression applies." 1 R. Carl Moy, Walker on Patents § 4:91 (4th ed. 2020); *see Amtel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). The next step is to look to the written description or specification to identify the structure that corresponds to the function. *Lockheed Martin Corp.*, 324 F.3d at 1319. A "[s]tructure disclosed in the specification qualifies as 'corresponding structure' if the intrinsic evidence clearly links or associates that structure to the function recited in the claim." *Williamson v. Citrix Online, LLC*, 792 F. 3d 1339, 1352 (Fed. Cir. 2015). This "clear[ ] link[ ]" exists where one skilled in the art understands the specification to disclose a structure corresponding to the claim's recited function. *Amtel Corp.*, 198 F.3d at 1379–80.

Here, SnappyScreen asserts that the means-plus-function term in claim one is indefinite because the function—storing sunscreen—is not associated with a corresponding structure, and therefore the patent is invalid and unenforceable. Because a patent is presumptively valid, 35 U.S.C. § 282, the party seeking to establish invalidity must do so by clear and convincing evidence, *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with

7

reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). In the context of a means-plus-function claim, "when the specification fails to identify sufficient [a corresponding] structure for performing the claimed function, the means-plus-function limitation lacks any discernible scope, and the claim is invalid for indefiniteness." *Via Vadis, LLC v. Blizzard Ent., Inc.*, 815 F. App'x 539, 545 (Fed. Cir. 2020); *see also Noah Sys., Inc. v. Intuit, Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012). But to avoid invalidity, a patent holder need only "recite *some* structure corresponding to the means in the specification" such that the court "can readily ascertain what the claim means." *Atmel Corp.*, 198 F.3d at 1382 (emphasis added). "[T]his is not a high bar[.]" *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). "The test is not merely whether a claim is susceptible to differing interpretations. Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction." *Nevro Corp.*, 955 F.3d at 41.

The only term before the Court for construction is "means to store sunscreen lotion." (Claim Construction Chart at 7). Because the term includes the word "means," and because the parties agree, (Initial Br. at 1; Reply Br. at 4), the Court presumes and concludes the term is a means-plus-function limitation, *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999). The parties also agree that the term's stated function is "to store sunscreen lotion." (Initial Br. at 11; Reply Br. at 8). The only question for claim construction analysis is whether there is a disclosed structure that corresponds to that function, *i.e.*, whether there is a component of the machine that stores sunscreen lotion. SnappyScreen contends because there is no

8

structure identified that stores sunscreen lotion the term is indefinite, and the claim unenforceable.

Sunscreen Mist proposes that the structures to "store sunscreen lotion" are "[s]torage containers **41** and sunscreen lotion tanks **381–385**." (Claim Construction Chart at 7). These containers and tanks are described in the patent specification:

> Spray assemblies **31** are fluidly connected to the sunscreen lotion storage containers **41** (FIG. **4**) that are located in equipment housing **40**.
>
> . . .
>
> Pumps **181–185** are operably coupled to corresponding fluid lines **281–285** which in turn are fluidly connected to corresponding sunscreen lotion tanks **381–385**. Sunscreen lotion tanks **381–385** are located within equipment housing **40** and each contain a different SPF grade of sunscreen.

(*Id.*); U.S. Patent No. 6,918,897 col. 5 ll. 18–21 & col. 7, ll. 44–49. The specification includes an illustration of the systems, Figure 4, reproduced below.



U.S. Patent No. 6,918,897 fig. 4.

9

Sunscreen Mist concedes that the diagram does not include anything labelled "**41**." (Initial Br. at 12). At the claim construction hearing, it contended that the missing "storage container **41**" is a scrivener's error, (Tr. at 27:04–:11), and that a person with ordinary skill in the art would understand that "storage container **41**" referenced in the '897 Patent was equivalent to the "sunscreen lotion tanks" referenced and illustrated later in the specification as lotion tanks **381–385**, (*id.* at 34:08–:11).

SnappyScreen contends that the specification's failure to identify a component **41** is fatal to the claim because it means there is no "means to store sunscreen lotion" identified. (*E.g.*, Reply Br. at 10–11). As to the assertion that the "sunscreen lotion tanks," labeled **381–385**, constitute the necessary structure, it contends that "storage containers" are distinct from "sunscreen lotion tanks, " (*id.* at 11–12; Tr. at 23:13–:21), and the "failure to provide guidance to allow one to differentiate" between storage containers and sunscreen lotion tanks makes it impossible to understand the scope of "means to store sunscreen lotion," (Tr. at 23:13–:21; *accord* Pl.'s Suppl. Br. at 4–5).

The Court concludes that a person having ordinary skill in the art would understand that the term "means to store sunscreen lotion" corresponds to the sunscreen lotion tanks numbered **381 to 385** and their equivalent structures. In making this finding, the Court relies exclusively on intrinsic evidence—here, the patent specification. *See CVI/Beta Ventures, Inc.*, 112 F.3d at 1152 (noting that "when 'an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term,' it is improper to rely on extrinsic evidence" (quoting *Vitronics Corp.*, 90 F.3d at 1583)).

The claim covers "[a] vending machine for dispensing sunscreen lotion comprising . . . means to store sunscreen lotion." U.S. Patent No. 6,918,897 col. 8 ll. 57–

60. The specification provides that, to use the machine, a user enters an application booth outfitted with "spray assemblies **31** mounted to the walls." *Id.* col. 5 ll. 17–18. These spray assemblies are then "fluidly connected to the sunscreen lotion storage containers **41** (FIG. **4**) that are located in equipment housing **40**." *Id.* col. 5 ll. 19–21. Equipment housing—a kind of enclosed structure—**40** is depicted in Figures 1 and 2, reproduced below.



*Id.* fig. 1.



*Id.* fig. 2.

This structure houses "the necessary equipment, circuitry, and supplies needed to operate sunscreen application machine **10**," which includes the "pumps" and "containers of sunscreen lotion with various SPF grades." *Id.* col. 6 ll. 7–11.

"Sunscreen lotion tanks **381**–**385** are located within equipment housing **40** and each contain a different SPF grade of sunscreen lotion." *Id.* col. 7 ll. 47–49. This system is illustrated in Figure 4, which shows sunscreen lotion tanks numbered **381** to **385** connected to fluid lines numbered **281 to 285**, which are in turn connected to pumps numbered **181 to 185**. *Id.* fig. 4. To use the machine, the user selects a preferred SPF grade of sunscreen via the control panel, which triggers the "appropriate pump **181**–**185**." *Id.* col. 7 ll. 40–44. These pumps correspond to fluid lines **281**–**285** which in turn connected to the sunscreen lotion tanks **381**–**385**. As such, for the function to store sunscreen, there is a structure where that occurs, namely tanks **381**–**385**, that is located in the housing identified as **40**. As noted, a patent holder must only "recite *some* structure corresponding to the means in the specification" such that the court "can readily ascertain what the claim means." *Atmel Corp.*, 198 F.3d at 1382 (emphasis added). This low bar, *Biomedino, LLC*, 490 F.3d at 950, is met by the '897 Patent, which clearly discloses sunscreen lotion tanks **381 to 385**. *See, e.g.*, *Rest. Techs., Inc. v. Jersey Shore Chicken*, No. 05-CV-5356, 2007 WL 446910, at *11 & n.2 (D.N.J. Feb. 6, 2007) (construing means-plus-function limitation as corresponding to structures disclosed in patent specification despite clerical errors), *aff'd*, 360 F. App'x 120 (Fed. Cir. 2010).

SnappyScreen's argument that the means-plus-function claim fails to identify a structure is without merit. SnappyScreen's position turns on the following language in the patent—"spray assemblies **31** are fluidly connected to the sunscreen lotion storage

12

containers **41** (FIG. **4**) that are located in equipment housing **40**." *See* U.S. Patent 6,918,897 col. 5 ll. 18–21. In SnappyScreen's view, there is a difference between "storage containers" and "tanks" for sunscreen, and the failure to identify "storage containers" means there is no structure in which to hold sunscreen. It is not reasonable to interpret "storage containers" and "tanks" differently here, and SnappyScreen does not provide any kind of plausible explanation of what the difference between the two might be or what might be in the tanks that would not be sunscreen lotion.

The specification states that housing **40** contains: (1) "sunscreen lotion containers **41**," U.S. Patent 6,918,897 col. 5 ll. 19–20; (2) "containers of sunscreen lotion with various SPF grades," *id.* col. 6 ll. 10–11; and (3) "[s]unscreen lotion tanks" which each "contain a different SPF grade of sunscreen lotion," *id.* col. 7 ll. 47–49. The second and third descriptions are clearly referring to the same structure, namely the tanks **381 to 385** in Figure 4 of the patent specification. And in so doing, containers and tanks are being used interchangeably and synonymously—*i.e.*, there is no difference between a tank and container. Such an interpretation is consistent with the commonly accepted meanings of the terms. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."). Indeed, the parties themselves use these terms interchangeably in their chart of agreed upon claim constructions. For example, in their proposed construction of "means to spray the user with the stored sunscreen lotion,"—which is not in dispute— the parties propose that the Court construe this term as a means-plus-function limitation with a corresponding structure of "sunscreen lotion storage *containers* 381,

13

382, 383, 384, 385,'" (Claim Construction Chart at 3 (emphasis added)), even though they cite to the portion of the specification which identifies these structures as "sunscreen lotion *tanks*," *see* U.S. Patent 6,918,897 col. 7 ll. 46–47 (emphasis added).

But what about the reference to item **41**, which cannot be located on any diagram? It appears this is a scrivener's error, and district courts are empowered to correct clerical errors in patents during claims construction where "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003).

The patent offers an example of how the machine works where a user selects a "sunscreen lotion having an SPF of 20." U.S. Patent 6,918,897 col. 7 ll. 49–51. In such a case, the lotion is pumped from "tank **383** through the fluid line." *Id*. col. 7 ll. 52–54. In other words, the sunscreen comes from one of the tanks identified as **381 to 385**. The example illustrates that not having a container **41** does not impede the functioning of the device or leave the device without a place to store lotion. The reference to **41** is extraneous and unnecessary. Perhaps there was some earlier version of the patent that referred to these tanks collectively as **41**; it is of no moment, since lotion tanks **381 to 385** clearly are structures where the sunscreen lotion is stored.

And what about the sentence "spray assemblies **31** are fluidly connected to the sunscreen lotion storage containers **41** (FIG. **4**) that are located in equipment housing **40**"? *Id*. col. 5 ll. 18–21. Again, in the SPF 20 example, the patent describes how the machine takes lotion from container **383**, which is connected to fluid lines that meet up with the spray assemblies **31**. *See id*. col. 7 ll. 49–65. In other words, the reference to

14

**41** should clearly be to **381 to 385**, which no one disputes are located in housing **40**. This is a correctable scrivener's error. *See, e.g.*, *Sourceprose Corp. v. AT&T Mobility, LLC*, No. 11-CV-117, 2014 WL 2879694, at *13 (W.D. Tex. June 24, 2014) (finding that a dependent claim which referenced "claim 1" included a scrivener's error and should have referenced "claim 11" instead, and construing the claim accordingly); *Rest. Techs., Inc.*, 2007 WL 446910, at *11 n.2 ("The Court found several clerical errors in the '511 patent's specification, particularly with respect to the specification's references to the Figures contained in the '511 patent. We have corrected those clerical errors that appear in the specification provisions discussed in this opinion[.]").[7]

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that "means to store sunscreen" be construed as a means-plus-function limitation, with the function "storing sunscreen lotion" limited by the corresponding means "sunscreen lotion tanks **381**–**385**" and all equivalent structures having equivalent function.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by

---

[7] The case cited by SnappyScreen, *Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*, is distinguishable. (*See* Def.'s Suppl. Br. at 4–5). In *Bushnell*, the Eastern District of Virginia found that certain claims were indefinite where they referenced a "previously defined" term but that term was not actually defined anywhere in the claims or patent specification. No. 18-CV-760, 2019 WL 2745735, at *3 (E.D. Va. July 1, 2019), *aff'd*, 813 F. App'x 522 (Fed. Cir. 2020). The term at issue in *Bushnell* was "said different IP address," and the District Court found that this could have been referring to any number of IP addresses referenced throughout the patent specification. *See id*. In contrast, the patent specification here illustrates and describes one system of sunscreen lotion storage—storage tanks **381** to **385**. There is simply no other tank, container, or location that could be the corresponding structure to hold lotion, and so there is no indefiniteness in the claim.

15

the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

                                      SO ORDERED.

                                      */s/ Sanket J. Bulsara* February 26, 2021
                                      SANKET J. BULSARA
                                      United States Magistrate Judge

Brooklyn, New York