UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SUNSCREEN MIST HOLDINGS, LLC,

                        Plaintiff,

           - against -

SNAPPYSCREEN, INC.,

                        Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-835 (PKC) (SJB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Sunscreen Mist Holdings, LLC ("Sunscreen Mist") brings this action against Defendant SnappyScreen, Inc. ("SnappyScreen") for patent infringement and violation of the Lanham Act based on false advertising. (Second Amended Complaint ("SAC"), Dkt. 55, ¶¶ 1, 57–82.) Before the Court is Defendant SnappyScreen's objection to the February 26, 2021 Report and Recommendation ("R&R") of the Honorable Sanket J. Bulsara, Magistrate Judge, regarding the sole claim construction dispute in this matter. For the reasons below, the Court overrules Defendant SnappyScreen's objection and adopts Judge Bulsara's well-reasoned R&R in its entirety.

**BACKGROUND**

The patent at issue, U.S. Patent No. 6,918,897 ("the '897 Patent"), generally concerns a sunscreen vending machine that stores, dispenses, and sprays sunscreen lotion on users after accepting payment. (*See generally id.* ¶¶ 44–46.) The '897 Patent contains 19 claims—two independent claims and 17 dependent claims. *See* U.S. Patent No. 6,918,897 col. 8 l. 55–col. 10 l. 27 (filed July 31, 2002). The parties agree on the construction of all terms except one of the limitations of Claim One. Claim One discloses:

> A vending machine for dispensing sunscreen lotion comprising:
> means to accept payment from a user,
> means to store sunscreen lotion, and
> means to spray the user with the stored sunscreen lotion after acceptance of payment
> wherein the means to store sunscreen lotion is adapted to store a plurality of grades of sunscreen lotion, the machine further comprising means for the user to select which grade of sunscreen lotion will be sprayed by the means to spray.

*Id.* at col. 8 ll. 56–66. The parties dispute the construction of the limitation "means to store sunscreen lotion." (*See* Plaintiff's Initial Claim Construction Brief ("Pl.'s Br."), Dkt. 56, at 4–5; Defendant's Reply Claim Construction Brief ("Def.'s Br."), Dkt. 58, at 4.)

On October 26, 2020, Judge Bulsara held a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("*Markman* hearing"). (10/26/2020 Minute Entry.) Following the *Markman* hearing, Judge Bulsara issued the R&R, recommending that the limitation "means to store sunscreen lotion" be construed as a valid means-plus-function limitation, "with the function 'storing sunscreen lotion' limited by the corresponding means 'sunscreen lotion tanks **381**–**385**' and all equivalent structures having equivalent function." (R&R, Dkt. 67, at 15.) Defendant SnappyScreen timely objected to this construction,[1] arguing that the limitation is indefinite. (*See generally* Objection, Dkt. 72.)

## DISCUSSION

As an initial matter, the Court notes that "[t]here is a split in authority as to whether claim construction is a nondispositive pretrial matter." *Alexsam, Inc. v. MasterCard Int'l Inc.*, No. 15-CV-2799 (ILG) (SMG), 2018 WL 2849692, at *1 n.1 (E.D.N.Y. June 11, 2018) (collecting cases),

---

[1] Although the R&R, which was filed on February 26, 2021, gave the parties 14 days to file timely objections (R&R, Dkt. 67, at 15–16), the Court on March 8, 2021, granted SnappyScreen's consent motion for a 21-day extension of time to file objections, until April 2, 2021. (3/8/2021 Docket Order.) SnappyScreen timely filed its objection on April 2, 2021. (Dkt. 72.)

*report and recommendation adopted*, 2020 WL 3286785, at *2–3 (E.D.N.Y. June 17, 2020); *accord Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-CV-6276 (AJN), 2018 WL 4759744, at *2 (S.D.N.Y. Sept. 30, 2018) (collecting cases). If claim construction is a nondispositive matter, the Court would "consider timely objections" to the magistrate judge's order and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See* Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Seoul Viosys Co.*, 2018 WL 4759744, at *1 ("A decision is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." (quoting *Levy v. Young Adult Inst.*, No. 13-CV-2861 (JPO), 2016 WL 4402038, at *1 (S.D.N.Y. Aug. 18, 2016))). On the other hand, if claim construction is a dispositive matter, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *N.Y.C. Dist. Council of Carpenters v. Allied Design & Constr., LLC*, 335 F. Supp. 3d 349, 351 (E.D.N.Y. 2018) ("[O]bjections must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (citing *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009))). Here, the Court need not decide whether claim construction is a dispositive matter, because the Court concludes on *de novo* review that Defendant SnappyScreen's objection to the recommended construction of the claim limitation "means to store sunscreen lotion" is meritless.

The parties agree that the claim limitation "means to store sunscreen lotion" is a means-plus-function limitation subject to 35 U.S.C. § 112, ¶ 6.[2] (Objection, Dkt. 1, at 1.) Construction

---

[2] The Leahy-Smith America Invents Act ("AIA")—enacted on September 16, 2011—amended 35 U.S.C. § 112. *See* AIA, Pub. L. No. 112-29, 125 Stat. 284, 296–97 (2011). The amendments took effect on September 16, 2012, *i.e.*, "upon the expiration of the 1-year period beginning on the date of the enactment of [the AIA]." *Id.* at 297; *see also AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1290 n.3 (Fed. Cir. 2014). Because the patent application here was filed on July 31, 2002 (SAC, Dkt. 55, ¶ 42), the pre-AIA version of § 112 applies, *see AbbVie*, 759 F.3d at 1290 n.3. This version of § 112, ¶ 6, provides:

3

of a means-plus-function limitation involves a two-step process. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015) (en banc). First, "the court must determine the claimed function," and second, "the court must identify the corresponding structure in the written description of the patent that performs the function." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) (quoting *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)). Here, Judge Bulsara concluded—and there is no objection—that the claimed function is "storing sunscreen lotion." (R&R, Dkt. 67, at 2, 15.) Therefore, "the only question before the Court is 'whether the specification discloses sufficient structure that corresponds to the claimed function.'" (Objection, Dkt. 72, at 1 (quoting *Williamson*, 792 F.3d at 1351).)

A structure corresponds to the claimed function "if the specification or the prosecution history 'clearly links or associates that structure to the function recited in the claim.'" *Noah*, 675 F.3d at 1311 (quoting *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)). "Even if the specification discloses a 'corresponding structure,' the disclosure must be adequate; the patent's specification must provide 'an adequate disclosure showing what is meant by that [claim] language.'" *Id.* (alteration in original) (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc)). "If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." *Id.* at 1311–12 (quoting *Donaldson*, 16 F.3d at 1195); *see also*

---

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6 (2006).

4

35 U.S.C. § 112, ¶ 2 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."). In other words, "[i]f the patentee fails to disclose adequate corresponding structure, the [means-plus-function] claim is indefinite." *Williamson*, 792 F.3d at 1352 (citing *Noah*, 675 F.3d at 1311–12). This inquiry is undertaken in light of the knowledge of "one skilled in the art" in question. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378–80 (Fed. Cir. 1999); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." (collecting cases)). Accordingly, "a means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Noah*, 675 F.3d at 1312 (quoting *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1241 (Fed. Cir. 2007)); *see also Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 41 (Fed. Cir. 2020) ("The test for indefiniteness is whether the claims, viewed in light of the specification and prosecution history, 'inform those skilled in the art about the scope of the invention with reasonable certainty.'" (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014))).

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history," as such evidence "is the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman*, 52 F.3d at 979). In particular, the patent's specification "is always highly relevant to the claim construction analysis" and "is the single best

5

guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). If the intrinsic evidence alone resolves the ambiguity in a disputed claim term, "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583 (collecting cases).

The Court, like the R&R, concludes that the intrinsic evidence in this case—namely, the specification—is sufficient to resolve whether the '897 Patent discloses adequate corresponding structure with respect to the claimed function of storing sunscreen lotion. (*See* R&R, Dkt. 67, at 10.) It does. The specification includes a description of "the control system and equipment used to make" the claimed sunscreen vending machine work. '897 Patent, col. 7 ll. 4–6. A schematic representation, labeled as Figure 4 and reproduced below, is also included.



Figure 4

*Id.* at fig.4. Significantly, in describing the control system and equipment, as represented in Figure 4, the specification discloses that "[p]umps **181**–**185** are operably coupled to corresponding fluid lines **281**–**285** which in turn are fluidly connected to corresponding sunscreen lotion tanks **381**–**385**. Sunscreen lotion tanks **381**–**385** are located within equipment housing **40** and each contain [*sic*] a different SPF grade of sunscreen lotion." *Id.* at col. 7 ll. 44–49. The specification also discloses, referring to Figure 1 (reproduced below), that "equipment housing **40** holds the necessary equipment, circuitry, and supplies needed to operate sunscreen application vending machine **10**. For example, equipment housing **40** holds the pumps, containers of sunscreen lotion with various SPF grades; disinfectant liquid, flow meters, wiring, and the like." *Id.* at col. 6 ll. 7–12.



Figure 1

*Id.* at fig.1. Given this specification, a person of ordinary skill in the art would be able, with reasonable certainty, to recognize and associate "sunscreen lotion tanks **381**–**385**" with the claimed function of storing sunscreen lotion.

In arguing that a person of ordinary skill in the art would be unable to recognize adequate structure corresponding to the claimed function of storing sunscreen lotion—thus rendering the limitation "means to store sunscreen lotion" indefinite, *see Noah*, 675 F.3d at 1311–12—Defendant SnappyScreen relies on the specification's disclosure of "sunscreen lotion storage containers **41** (FIG. **4**) that are located in equipment housing **40**," '897 Patent, col. 5 ll. 19–21. (*See* Objection, Dkt. 72, at 1–2.) Plaintiff Sunscreen Mist concedes that "**41**" does not appear in Figure 4, or Figure 1. (Pl.'s Br., Dkt. 56, at 12; Markman Hearing Transcript ("Hr'g Tr."), Dkt. 63, at 28:20–21, 29:15–16.) Nor does the prosecution history address this apparent omission. (*See* Hr'g Tr., Dkt. 63, at 29:16–19.) SnappyScreen therefore contends that the '897 Patent "discloses no structure for the 'storage containers 41' corresponding . . . to the 'means to store' limitation of the claims," and as a result, that claim limitation must be indefinite. (*See* Objection, Dkt. 72, at 2.)

SnappyScreen's contention is unavailing. A person of ordinary skill in the art does not read claim terms in a vacuum, but rather does so "in the context of the entire patent." *Phillips*, 415 F.3d at 1313; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005). Here, the specification discloses "sunscreen lotion storage containers **41** (FIG. **4**) that are located in equipment housing **40**." '897 Patent, col. 5 ll. 19–21. Later, the specification reiterates that "equipment housing **40** holds . . . containers of sunscreen lotion with various SPF grades." *Id.* at col. 6 ll. 10–11. The specification then notably goes on to state that "[s]unscreen lotion tanks **381**–**385** are located within equipment housing **40** and each contain [*sic*] a different SPF grade of

8

sunscreen lotion." *Id.* at col. 7 ll. 47–49. Figure 4 clearly discloses the "sunscreen lotion tanks **381–385**." *Id.* at fig. 4. Indeed, both Figure 4 and the written specification indicate that "sunscreen lotion tanks **381–385**," *just like* "sunscreen lotion storage containers **41**," are "fluidly connected to" the "spray assemblies **31**," which are the structures that "spray the sunscreen lotion mist onto the user." *See id.* at fig. 4; col. 7 l. 44–col. 8 l. 11; *see also id.* at col. 5 ll. 17–25. In short, the specification as a whole makes evident that "sunscreen lotion tanks **381**–**385**," like "sunscreen lotion storage containers **41**," contain various SPF grades of sunscreen lotion, are located within "equipment housing **40**," and are fluidly connected to the spray assemblies. Hence, reading the specification in its entirety leaves no room for reasonable debate that "sunscreen lotion storage containers **41**" and "sunscreen lotion tanks **381**–**385**" are referring to the same structure, which adequately corresponds to the claimed function of storing sunscreen lotion. The Court accordingly agrees with the R&R that the reference in the specification to "**41**" "is of no moment," and in any event is "correctable scrivener's error." (*See* R&R, Dkt. 67, at 14–15.) *Cf. Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003) (holding that a district court may correct an error in a patent "only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims").

Defendant SnappyScreen argues that "containers" and "tanks" are "presum[ed]" to be "separate and distinct structures." (Objection, Dkt. 72, at 2 (citing *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010)).) But the presumption that two different terms in a patent have different meanings "is not conclusive." *Comaper*, 596 F.3d at 1348 (citing *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004)). And here, the specification—"the single best guide to the meaning of a disputed term," *Vitronics*, 90 F.3d at

1582—makes plain that the terms "containers" and "tanks" are referring to the same structure, *cf. Comaper*, 596 F.3d at 1348 (deciding that the intrinsic evidence supported the conclusion that the terms "drive bay" and "drive bay slot" have different meanings); *Bancorp Servs.*, 359 F.3d at 1373 (deciding that the specification supported the conclusion that the terms "stable value protected investment," "surrender value protected investment," and "SVP" were all equivalent).

Defendant SnappyScreen's reliance on *Bushnell Hawthorne, LLC v. Cisco Systems, Inc.*, No. 18-CV-760, 2019 WL 2745735 (E.D. Va. July 1, 2019), *aff'd*, 813 F. App'x 522 (Fed. Cir. 2020), similarly misses the mark. (*See* Objection, Dkt. 72, at 2.) In *Bushnell*, the Eastern District of Virginia determined that the claim term "said different IP Address" was indefinite because "neither the claim language nor the specification provide[d] a reasonably certain predicate for the term." 2019 WL 2745735, at *3. The claim itself provided "three different IP addresses to choose from," such that a person of ordinary skill in the art was "left to wonder which of the different IP addresses [was the] 'said' different one." 813 F. App'x at 526. And the patent's specification did not help the matter. *See id.* at 526–27; *see also* 2019 WL 2745735, at *4. Here, by contrast, the '897 Patent's specification not only makes reasonably certain that the "means to store sunscreen lotion" of Claim One corresponds to "sunscreen lotion tanks **381**–**385**," but the specification also makes reasonably certain that "sunscreen lotion tanks **381**–**385**" and "sunscreen lotion storage containers **41**" are equivalent. In other words, the R&R rightly concludes that, unlike in *Bushnell*, "the patent specification here illustrates and describes one system of sunscreen lotion storage—storage tanks **381** to **385**"—and "[t]here is simply no other tank, container, or location that could be the corresponding structure to hold lotion." (R&R, Dkt. 67, at 15 n.7.)

Finally, the Court rejects Defendant SnappyScreen's contention that this is not a case where a court has the authority to correct the patent. (*See* Objection, Dkt. 72, at 2–3.) In light of the

10

specification, there can be no "reasonable debate" that "sunscreen lotion storage containers **41**" and "sunscreen lotion tanks **381**–**385**" are referring to the same structure, and the prosecution history does not suggest otherwise. *See* '897 Patent, fig. 4; col. 5 ll. 17–25; col. 6 ll. 9–12; col. 7 l. 44–49; Hr'g Tr., Dkt. 63, at 29:16–19; *see also Novo*, 350 F.3d at 1354 (a district court may correct error in a patent if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims"). Additionally, correcting the patent in this instance "is not in any real sense, a re-making of the claim; but is merely giving to it the meaning which was intended by the applicant and understood by the examiner." *See Novo*, 350 F.3d at 1355 (quoting *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 442 (1926)). Defendant SnappyScreen asserts that Judge Bulsara "imposed a correction different than the one" that Plaintiff Sunscreen Mist suggested at the *Markman* hearing. (Objection, Dkt. 72, at 3.) But one of the suggestions that Sunscreen Mist proffered at the hearing was that "there was supposed to be a 41 in fig. 4, and it was supposed to point to the tanks 381 through 385." (Hr'g Tr., Dkt. 63, at 29:10–11.) The Court sees no meaningful difference between that suggestion and Judge Bulsara's recommendation that "the reference to **41** should clearly be to **381 to 385**." (R&R, Dkt. 67, at 14–15.) Both achieve the same result of clarifying that "sunscreen lotion storage containers **41**" and "sunscreen lotion tanks **381**–**385**" are the same structure, a fact that the specification as a whole makes evident. The Court also finds inapt SnappyScreen's argument that correction by the Court "improperly allows [Sunscreen Mist] to avoid the consequence of pursuing a formal certificate of correction" (Objection, Dkt. 72, at 3 (citing *Novo*, 350 F.3d at 1357)) and having "the PTO bring its expertise to bear and consider whether such a correction is appropriate" (*id.* (quoting *Novo*, 350 F.3d at 1357)). SnappyScreen does not explain what expertise the PTO might bring to bear here.

11

(*See id.*)  And in this case, "the error is [] evident from the face of the patent itself."  *See Novo*, 350 F.3d at 1357; *cf. Phillips*, 415 F.3d at 1314 (recognizing that "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges" (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001))).  Resolving the issue in this case requires simply reading the specification with common sense.

## CONCLUSION

The Court adopts Judge Bulsara's well-reasoned R&R in its entirety.  Accordingly, the term "means to store sunscreen lotion" in Claim One is a means-plus-function limitation, with the function "storing sunscreen lotion" limited by the corresponding means "sunscreen lotion tanks **381**–**385**" and all equivalent structures having equivalent functions.

                     SO ORDERED.

                     */s/ Pamela K. Chen*
                     Pamela K. Chen
                     United States District Judge

Dated: July 20, 2021
     Brooklyn, New York